UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

Rapid Metals, LLC,                          Chapter 11
                                            Case No. 23-46098-mlo
       Debtor.                          Hon. Maria L. Oxholm

_____/


### DECLARATION OF MICHAEL RIZZO IN OPPOSITION TO THE DEBTOR'S MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

I, Michael Rizzo, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.       I am a consultant with RAS Management Advisors LLC ("RAS"). I submit this Declaration in support of secured creditor Bank of America, N.A.'s opposition to the Debtor's Motion for Entry of an Interim and Final Order Authorizing the Debtor to Use Cash Collateral and Granting Adequate Protection (the "Motion"). If called upon to testify, I can testify competently to the matters set forth in this declaration.

### Preliminary Statement

2.       Before Rapid Metals, LLC ("Rapid Metals" or the "Debtor") filed its Chapter 11 Petition (the "Petition"), I attempted to confirm with customers of the Debtor certain of the Debtor's invoices and accounts receivable shown on the Debtor's accounts receivable aging as of June 23, 2023 (the "June 23, 2023 Accounts Receivable Aging"). Pursuant to the Loan and Security Agreement dated as of November 9, 2022, between Bank of America, as "Lender," and the Debtor, as "Borrower" (the "Loan Agreement," a copy of which is attached hereto as Exhibit A), the Debtor was required to provide, and did provide, the June 23, 2023 Accounts Receivable

7566986.1

Aging to Bank of America, N.A. ("Bank of America"). The Debtor's sole and managing member, Daniel Butler ("Butler"), provided that accounts receivable aging to Bank of America on behalf of the Debtor.

3. The work I performed included, among other things, attempting to verify several of the largest balances listed on the June 23, 2023 Accounts Receivable Aging, which Butler had submitted to Bank of America along with Rapid Metals' "Borrowing Base Report" dated June 23, 2023 (the "June 23, 2023 BBR"), with the customers listed on the June 23, 2023 Accounts Receivable Aging.

4. While most of the customers I contacted did not provide me with the information that I had requested, at least four of those customers did provide me with such information. As detailed below, I found that, with regard to three of the four customers that supplied the requested information, at least $3 million of the amounts listed on the June 23, 2023 Account Receivable Aging were unsupportable:

- According to the June 23, 2023 Accounts Receivable Aging, Hascall Steel Company ("Hascall") – a steel processing company based near Grand Rapids, Michigan, with additional operations in other states, which the Debtor utilized to perform processing steel and/or other metal processing services and which also purchased metal a customer of the Debtor for its own account – owed a total of $2,337,530 to the Debtor as of June 23, 2023. This was the largest receivable listed on the June 23, 2023 Accounts Receivable Aging. However, when I inquired, the customer advised that this balance included $575,447 in duplicate invoices and $685,383 in invoices of which Hascall had no record – a total of $1,260,830 in unsupported accounts receivable from this one customer alone. Thus, at most

$1,0767,700 (or less than half) of the $2,337,530 outstanding balance that the Debtor represented it was owed by Hascall was supportable.

- According to the June 23, 2023 Accounts Receivable Aging, Haydon Corp. ("Haydon") – a customer of the Debtor that is a producer of metal framing and baseboard systems, with its headquarters in Wayne, New Jersey, and plants in Wayne, New Jersey, Grand Prairie, Texas, and Stockton, California – owed $1,328,990.25 to the Debtor. This was the fourth largest receivable listed on the June 23, 2023 Accounts Receivable Aging. However, when I tried to confirm that balance with Haydon, I learned that that receivable was overstated by $1,155,785.03, including:

  o $800,000 in overstatements because eight of the invoices listed on the June 23, 2023 Accounts Receivable Aging were listed on that aging at amounts that were each $100,000 higher than the actual invoice amounts;

  o $199,493.29 in overstatements because (even at their true prices) those same eight invoices were not even outstanding as of June 23, 2023, because they had all been paid on June 3, 2023; and

  o $156,214.85 in overstatements, consisting of two invoices of which Haydon had no record.

Thus, $1,155,785.03 of the $1,328,990.25[1] in accounts receivable the Debtor represented as being due from Haydon was unsupportable. In fact, although the Debtor had represented to Bank of America that $1,328,990.25 was due from

---

[1] $64,731.31 plus $108,474.91 plus $1,155,708.14 equals $1,328,913.36. However, this is $76.89 less than $1,328,990.25, which is the amount shown as owed on the June 23, 2023 Accounts Receivable Aging. That is because one invoice was paid short by Hascall at $25,817.16 instead of $25,894.05, a difference of $76.89.

Haydon as of June 23, 2023, Haydon's records showed that it only owed the Debtor $64,730.31 as of June 30, 2023, that Haydon had made a payment of $108,474.91 on June 30, 2023, and that Haydon made no other payments between June 23, 2023, and June 30, 2023. Accordingly, Haydon's records reflect that Haydon actually owed the Debtor only $173,205.22 as of June 23, 2023 (or about one-eighth (1/8) of the amount that the Debtor had represented to Bank of America was owed by Haydon).

- According to the June 23, 2023 Account Receivable Aging, Center Steel Sales, Inc. ("Center Steel") – a customer of the Debtor that is a supplier of high-strength steel products based in Allen Park, Michigan – owed $638,890.96 to the Debtor. This was the seventh largest receivable listed on the June 23, 2023 Accounts Receivable Aging. However, in response to my email inquiry, Center Steel stated that it did not owe anything to the Debtor and that the last time Center Steel made a payment to the Debtor was more than a year ago.

5.     The Debtor's gross (and, in my professional opinion, fraudulent) overstatement of its assets undermines its argument, and contradicts its purported showing, that Bank of America is oversecured, let alone that it has an equity cushion. In her Declaration in support of the Motion (the "Marcero Decl.") (ECF 36), the Debtor's proposed chief restructuring officer ("CRO"), Laura Marcero ("Marcero") of Huron Consulting Services, LLC ("Huron"), asserts that the Debtor has "[a]ccounts receivable valued at approximately $10,578,385, which was confirmed on a sample test basis," and that "[i]t also appears that the Debtor's inventory is valued at approximately, $14,679,360.00, which was confirmed on a sample test basis" (Marcero Decl. ¶¶ 13, 14), but provides no support for those assertions. Moreover, sampling is insufficient in instances such as

the case here, where there is evidence of a massive fraud. Based upon my experience, a substantial amount of the Debtor's accounts receivable will not be collected, and the Debtor will be unable to sell a significant amount of its inventory at full market value.

6.    Accordingly, for the reasons set forth below, the Motion should be denied.

## RAS and the Services It Performed for Bank of America

7.    RAS is a crisis management and turnaround firm of independent professional consultants, with specialties in areas ranging from finance to manufacturing, distribution, marketing and general management. RAS's areas of expertise include company turnarounds, while acting as interim Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO") or CRO for companies in or out of Chapter 11, Chapter 11 management, and the negotiation of sale transactions. RAS's consultants have an average of more than 25 years of business management experience. RAS often performs services for secured lenders with respect to their borrowers.

8.    In June 2023, RAS was retained by Otterbourg P.C., in its capacity as counsel for Bank of America, to perform services with respect to the revolving loans made by Bank of America to the Debtor pursuant to the Loan Agreement (collectively, the "Loan"), including evaluating the existence and value of the items making up Bank of America's collateral for the Loan, and whether the Debtor had accurately reported its inventory and its accounts receivable to Bank of America. During the course of providing those services, RAS attempted to verify certain of the accounts receivable listed in the June 23, 2023 Accounts Receivable Aging with certain of the Debtor's customers.

9.    I am one of the consultants who performed services for Bank of America with respect to the Debtor. The other such consultant was Timothy Boates, who is also the president and a member of RAS.

10.     I joined RAS Management in 2004.  Since joining RAS, I have served in various advisory and management roles while assisting clients ranging in size from $20 million to $1 billion in annual revenue with turnarounds, restructurings and wind-downs both in and outside of bankruptcy.  My responsibilities have included stabilizing cash flows, negotiating with vendors and customers, assisting in the sale of operating divisions, monetizing unproductive assets, monitoring operations, and developing financial projections and asset valuations.  I have also performed due diligence reviews for lenders and company management, including such reviews with the object of improving liquidity and reducing overhead.

11.     Prior to joining RAS, I held various senior financial management positions with companies, including that of CFO.  I hold a Bachelor's of Science Degree from Boston College's Carroll School of Management with a major in Accounting.  I reside in Massachusetts.

### **Bank of America's Asset-Based Loans to the Debtor**

12.     Since November 9, 2022, Bank of America has made asset-based revolving loans to the Debtor pursuant to the Loan Agreement which are secured by the Debtor's assets, including its inventory and accounts receivable.  Under the Loan Agreement, the Debtor was entitled to borrow amounts from Bank of America under a collateral-based formula, referred to as the "Borrowing Base," based upon a percentage of eligible inventory and a percentage of eligible accounts receivable, up to the maximum amount of $30,000,000.

13.     Specifically, at all times since April 1, 2023, the "Borrowing Base" has been equal to (i) 85% of the Debtor's "Eligible Accounts" (accounts receivable) plus (ii) the sum of the lesser of 85% of the "net ordinary liquidation value" of the Debtor's "Eligible Inventory" and 70% of the value of its "Eligible Inventory," for four different types of inventory, (iii) minus "Reserves." (Loan Agreement § 1.1).  To be "Eligible," an "Account" must meet several requirements,

including, among other requirements, that it not be "unpaid for more than 60 days after the original due date, or more than 90 days after the original invoice date." (Loan Agreement § 1.1).

14.     The Debtor's inventory consists of rolled metal (including primarily steel) stored at approximately 80 locations in multiple states which are operated by independent third-party processors, one of which is Hascall.  However, the Debtor does not own or lease any of those facilities.  Instead, the Debtor purchases steel and/or other metals and has them processed (slit, galvanized, etc.) to a customer's specifications by those processors at their places of business. Hascall also appears to purchase metal from Rapid Metals for its own account.  The Debtor owns inventory which is stored at outside processors (near their clients/mills).

15.     In order to confirm the existence and value of collateral for the Loan and that the Debtor was in compliance with the Loan Agreement, the Debtor was required to provide Bank of America on the fifteenth of each month for the preceding month, and weekly during an "Increased Reporting Trigger Period" (which would become effective following a default), with, among other items, a "Borrowing Base Report," listing its eligible receivables and inventory, certified by the Debtor (each a "Borrowing Base Report"), together with, among other documents, "a detailed aged trial balance of all Accounts as of the end of the preceding month [or for weekly reporting, at the end of the preceding week], specifying each Account's Account Debtor name and address, amount, invoice date and due date, showing any discount, allowance, credit, authorized return or dispute, and including such proof of delivery, copies of invoices and invoice registers, copies of related documents, repayment histories, status reports and other information as Lender may reasonably request" (each an "Accounts Receivable Aging," and, collectively, the "Accounts Receivable Agings") and, as of the 15th day of each month "inventory and reconciliation reports, in form and substance satisfactory to Lender (including, without limitation, reporting that is done on the lower

of cost or market basis and broken down by category, which shall include a breakdown of the primary and secondary Inventory coils … prepared as of the preceding month ... as of the preceding month" (each a "Perpetual Inventory Report," and, collectively, the "Perpetual Inventory Reports") (Loan Agreement §§ 8.1, 8.2.1, 8.3.1).

16.     The last Borrowing Base Report, the last Accounts Receivable Aging, and the last Perpetual Inventory Report submitted to Bank of America by the Debtor were, respectively, the June 23, 2023 BBR, the June 23, 2023 Accounts Receivable Aging, and a Perpetual Inventory Report dated as of June 23, 2023 (the "June 23, 2023 Perpetual Inventory Report").

### My Attempts to Confirm the Invoices and Accounts Receivable Balances Shown on the June 23, 2023 Accounts Receivable Aging

17.     I attempted to confirm the invoices and accounts receivable balances shown on the June 23, 2023 Accounts Receivable Aging with the entities listed thereon as having the nine largest receivable balances, as well as with three other entities shown as having receivable balances on the June 23, 2023 Accounts Receivable Aging.  I identified more than $3 million in overstatements in just three of those accounts – those for Hascall, Haydon and Center Steel.  I was only able to confirm the balance listed for one of entities with the nine largest receivable balances – Valiant Steel & Equipment, Inc. ("Valiant").  The other five entities among those with the nine largest receivable balances shown on the June 23, 2023 Accounts Receivable Aging (and three other entities listed on the June 23, 2023 Accounts Receivable Aging) did not respond to my inquiry at all, indicated that they would provide me with the requested information but did not do so, or in one case – that of MAC Corporation, for which the June 23, 2023 Accounts Receivable Aging showed an outstanding balance of $2,008,354.16, but for which MAC Corporation's own records only showed an outstanding balance of $1,653,999.94 – responded to my initial inquiry, but did not respond to my inquiry seeking to reconcile the $354,354.22 difference.

**A.** **The Duplicative and Nonexistent Invoices from Hascall and the Overstatement of the Outstanding Balance Due from Hascall in the June 23, 2023 Accounts Receivable Aging**

18.     According to the June 23, 2023 Accounts Receivable Aging submitted by the Debtor to Bank of America on June 28, 2023, Hascall – a steel processor which performs processing work for the Debtor with its headquarters in Grandville, Michigan, but with additional locations in Nashville, Tennessee, and Detroit, Michigan – owed a total of $2,337,530 to the Debtor under invoices listed on the June 23, 2023 Account Receivable Aging.  However, my communications with Hascall have identified at least $1,260,830 in overstatements in that amount, as a result of:

>       (a)     $575,447 in duplicate invoices that were reflected in that balance; and

>       (b)     $685,383 in invoices of which Hascall had no record.

19.     Since the total amount of the receivables that the Debtor claimed to have from Hascall was $2,337,530, the amount owed by Hascall to the Debtor was actually at most $1,0767,700 – less than half of the amount claimed to be owed by Hascall.

20.     On July 6, 2023, at 1:20 p.m., I sent an email to Dag Hascall, the principal of Hascall (at dag@hascallsteel.com), Leah Jansen of Hascall (at leah@hascallsteel.com), and Latica Mangiapane of Hascall (at latica@hascallsteel.com), which I copied to Tim Boates of RAS (at tboates@rasmanagement.com), stating:

> Thank you for taking the time to discuss the relationship between Hascall Steel and Rapid Metals (vendor and customer).
>
> Per our discussion, attached is the detail of $2,337,530 that Rapid Metals LLC represents as being owed to them as of 6/23/23. Can you please reconcile this list against your records and let us know what you show as owed to Rapid Metals?
>
> Please let me know if you have any questions. Thank you.

21.     I attached to that email a spreadsheet entitled "Receivables Detail Report" as of June 23, 2023, with respect to Hascall.  A copy of my email and the spreadsheet attached to it is attached hereto as <u>Exhibit B</u>.

22.     On July 6, 2023, at 1:55 p.m., Leah Jansen, the Controller of Hascall, sent an email to me (at [mjrizzo@rasmanagement.com](mailto:mjrizzo@rasmanagement.com)), Dag Hascall (at [dag@hascallsteel.com](mailto:dag@hascallsteel.com)), and Latica Mangiapane of Hascall (at [latica@hascallsteel.com](mailto:latica@hascallsteel.com)), which he copied Tim Boates of RAS (at [tboates@rasmanagement.com](mailto:tboates@rasmanagement.com)).  Copies of that email and the spreadsheet Ms. Jansen attached to it (the "<u>Hascall Spreadsheet</u>") are attached hereto as <u>Exhibit C</u>.  In that the Jansen Email, Ms. Jansen wrote:

> Mike,
>
> Please see attached.
>
> The highlighted items are ones that I either do not have or appear to be duplicates.
>
> I noted if we sent payment and also if I have the invoice entered in our system. The ones without highlights agree 100% with amounts and dates.
>
> Please let me know if you have any further questions.
>
> Leah Jansen
> Controller

(Jansen Email, Exhibit C hereto, at 1).

23.     The Hascall Spreadsheet shows that Hascall (a vendor and a customer) was unable to verify $1,267,745 of the $2,337,530 listed on the June 23, 2023 accounts receivable aging, which was included with the Debtor's borrowing base submissions to Bank of America.  The Hascall Spreadsheet set forth the following information[2]:

Receivables Detail Report

---

[2] There were no entries in the columns for 61-90 days and more than 90 days.  Consequently, those columns have been eliminated from this chart.

7566986.1

10

RAPID METALS LLC

Report As Of: 6/23/2023

| Customer Name | | | | 1-30 | 31 - 60 | Running Total |
|---|---|---|---|---|---|---|
| HASGR | | **HASCALL STEEL COMPANY** | (616) 531-8600 | Limit:0.00 | | |
| INVOICE | 7156214 | 5/18/2023 | pd 6/29 E3360 | - | 18,789 | 18,789 |
| INVOICE | 7156257 | 5/22/2023 | pd 6/29 E3360 | - | 20,642 | 39,431 |
| CREDIT | 7156332 | 5/30/2023 | pd 6/29 E3360 | (21,229) | - | 18,202 |
| INVOICE | 7156257 | 6/01/2023 | Duplicate Number, only 5/22 is right amt? | 44,561 | - | 62,763 |
| INVOICE | 7156257 | 6/01/2023 | Duplicate Number, only 5/22 is right amt? | 48,788 | - | 111,551 |
| INVOICE | 7156257 | 6/01/2023 | Duplicate Number, only 5/22 is right amt? | 50,010 | - | 161,561 |
| INVOICE | 7156257 | 6/01/2023 | Duplicate Number, only 5/22 is right amt? | 49,987 | - | 211,548 |
| INVOICE | 7156257 | 6/01/2023 | Duplicate Number, only 5/22 is right amt? | 48,717 | - | 260,266 |
| INVOICE | 7156257 | 6/02/2023 | Duplicate Number, only 5/22 is right amt? | 49,886 | - | 310,151 |
| INVOICE | 7156257 | 6/02/2023 | Duplicate Number, only 5/22 is right amt? | 49,878 | - | 360,029 |
| INVOICE | 7156257 | 6/02/2023 | Duplicate Number, only 5/22 is right amt? | 50,123 | - | 410,151 |
| INVOICE | 7156570 | 6/14/2023 | pd 6/29 E3360 | 21,340 | - | 431,491 |
| INVOICE | 7156588 | 6/15/2023 | Entered | 183,498 | - | 614,989 |
| INVOICE | 7166040 | 6/15/2023 | Do not have copy | 176,582 | - | 791,571 |
| INVOICE | 7156570 | 6/14/2023 | pd 6/29 E3360 | 21,340 | - | 812,911 |
| INVOICE | 7156588 | 6/15/2023 | Duplicate? | 183,498 | - | 996,409 |
| INVOICE | 7166041 | 6/16/2023 | Do not have copy | 159,663 | - | 1,156,072 |
| INVOICE | 7166044 | 6/16/2023 | Do not have copy | 171,548 | - | 1,327,620 |
| INVOICE | 7166048 | 6/16/2023 | Do not have copy | 177,589 | - | 1,505,209 |
| INVOICE | 7156650 | 6/19/2023 | Entered | 13,746 | - | 1,518,955 |
| INVOICE | 7156651 | 6/19/2023 | pd 6/29 E3360 | 15,301 | - | 1,534,255 |
| INVOICE | 7156652 | 6/19/2023 | pd 6/29 E3360 | 15,982 | - | 1,550,238 |
| INVOICE | 7156653 | 6/19/2023 | pd 6/29 E3360 | 14,378 | - | 1,564,615 |
| INVOICE | 7156656 | 6/19/2023 | Have inv copy, not entered | 15,737 | - | 1,580,353 |
| INVOICE | 7156657 | 6/19/2023 | | 10,757 | - | 1,591,109 |
| INVOICE | 7156658 | 6/19/2023 | pd 6/29 E3360 | 15,840 | - | 1,606,949 |
| INVOICE | 7156659 | 6/19/2023 | pd 6/29 E3360 | 15,897 | - | 1,622,846 |

7566986.1

| | | | | | | |
|---|---|---|---|---|---|---|
| INVOICE | 7156660 | 6/19/2023 | Entered | 12,546 | - | 1,635,392 |
| INVOICE | 7156661 | 6/19/2023 | Entered | 15,819 | - | 1,651,211 |
| INVOICE | 7156662 | 6/19/2023 | Entered | 16,224 | - | 1,667,434 |
| INVOICE | 7156663 | 6/19/2023 | pd 6/29 E3360 | 15,911 | - | 1,683,345 |
| INVOICE | 7156664 | 6/19/2023 | pd 6/29 E3360 | 15,883 | - | 1,699,228 |
| INVOICE | 7156665 | 6/19/2023 | pd 6/29 E3360 | 15,918 | - | 1,715,146 |
| INVOICE | 7156666 | 6/19/2023 | pd 6/29 E3360 | 15,940 | - | 1,731,086 |
| INVOICE | 7156667 | 6/19/2023 | pd 6/29 E3360 | 15,954 | - | 1,747,039 |
| INVOICE | 7156668 | 6/19/2023 | Entered | 15,876 | - | 1,762,915 |
| INVOICE | 7156669 | 6/19/2023 | pd 6/29 E3360 | 15,925 | - | 1,778,840 |
| INVOICE | 7156670 | 6/19/2023 | Entered | 14,647 | - | 1,793,487 |
| INVOICE | 7156671 | 6/19/2023 | Entered | 14,697 | - | 1,808,184 |
| INVOICE | 7156681 | 6/20/2023 | pd 6/29 E3360 | 24,705 | - | 1,832,889 |
| INVOICE | 7156682 | 6/20/2023 | pd 6/29 E3360 | 19,526 | - | 1,852,415 |
| INVOICE | 7156683 | 6/20/2023 | Entered | 12,811 | - | 1,865,226 |
| INVOICE | 7156684 | 6/20/2023 | pd 6/29 E3360 | 14,894 | - | 1,880,120 |
| INVOICE | 7156685 | 6/20/2023 | Have inv copy, not entered | 12,021 | - | 1,892,141 |
| INVOICE | 7156686 | 6/20/2023 | Have inv copy, not entered | 14,245 | - | 1,906,385 |
| INVOICE | 7156689 | 6/20/2023 | pd 6/29 E3360 | 14,358 | - | 1,920,744 |
| INVOICE | 7156691 | 6/20/2023 | pd 6/29 E3360 | 13,207 | - | 1,933,950 |
| INVOICE | 7156692 | 6/20/2023 | pd 6/29 E3360 | 19,437 | - | 1,953,387 |
| INVOICE | 7156696 | 6/21/2023 | pd 6/29 E3360 | 7,234 | - | 1,960,621 |
| INVOICE | 7156698 | 6/21/2023 | pd 6/29 E3360 | 8,481 | - | 1,969,102 |
| INVOICE | 7156699 | 6/21/2023 | pd 6/29 E3360 | 19,447 | - | 1,988,548 |
| INVOICE | 7156700 | 6/21/2023 | pd 6/29 E3360 | 15,556 | - | 2,004,105 |
| INVOICE | 7156701 | 6/21/2023 | pd 6/29 E3360 | 9,138 | - | 2,013,242 |
| INVOICE | 7156702 | 6/21/2023 | pd 6/29 E3360 | 8,267 | - | 2,021,509 |
| INVOICE | 7156703 | 6/21/2023 | pd 6/29 E3360 | 8,976 | - | 2,030,485 |
| INVOICE | 7156704 | 6/21/2023 | pd 6/29 E3360 | 8,785 | - | 2,039,269 |
| INVOICE | 7156705 | 6/21/2023 | pd 6/29 E3360 | 9,563 | - | 2,048,833 |
| INVOICE | 7156706 | 6/21/2023 | pd 6/29 E3360 | 16,130 | - | 2,064,963 |
| INVOICE | 7156707 | 6/21/2023 | pd 6/29 E3360 | 16,117 | - | 2,081,080 |
| INVOICE | 7156708 | 6/21/2023 | pd 6/29 E3360 | 14,560 | - | 2,095,640 |

| | | | | | | |
|---|---|---|---|---|---|---|
| INVOICE | 7156709 | 6/21/2023 | pd 6/29 E3360 | 185,763 | - | 2,281,403 |
| INVOICE | 7156716 | 6/21/2023 | Entered | 15,404 | - | 2,296,808 |
| INVOICE | 7156717 | 6/21/2023 | Entered | 16,104 | - | 2,312,912 |
| INVOICE | 7156730 | 6/22/2023 | Entered | 13,464 | - | 2,326,376 |
| INVOICE | 7156744 | 6/23/2023 | Entered | 11,154 | - | 2,337,530 |
| **Total For** | | | | **2,298,099** | **39,431** | **2,337,530** |

24.     The invoices shown in orange on the Hascall Spreadsheet and above were all invalid because they were duplicates of other invoices.  The total amount of invoices as shown on the Hascall Spreadsheet that duplicated other invoices  is $575,447.

25.     The invoices shown in yellow on the Hascall Spreadsheet and above are invoices that Ms. Jansen indicated Hascall did not have copies of.  The total amount of those invoices as shown on the Hascall Spreadsheet is $685,383.

26.     Consequently, according to Hascall's records, at least $1,267,745 of the outstanding balance shown on the June 23, 2023 Accounts Receivable Aging for Hascall was not actually owed by Hascall.

27.     Separately, according to Hascall, the Debtor owed Hascall $47,561.56 (and was demanding that "arrangements for payment on delinquent invoices must be made prior to release") on certain of those invoices.

28.     In an email sent on July 6, 2023, at 11:25 a.m., by Latica Mangiapane, who is the Credit Manager of Hascall, to Dan Fiorillo and Michael Regina of Otterbourg P.C., Tim Boates of RAS and me, which was copied to Dan Butler, Betty Michalski and Leah Jansen, Ms. Mangiapane wrote as follows:

> We have Rapid Metals material currently ready for shipment; however, arrangements for payment on delinquent invoices must be made prior to release.
>
> Please see the attached statement. I am requesting immediate arrangements for payment on at least all invoices 30 days and over.

Please advise.

29.     Attached to Ms. Mangiapane's email was an "Accounts Receivable Aged Invoice Report" of Hascall which listed invoices totaling $47,561.56 due from the Debtor to Hascall. Copies of Ms. Mangiapane's email and the attached "Accounts Receivable Aged Invoice Report" are attached hereto as Exhibit D.

**B.      The Overstated, Paid and Nonexistent Invoices to Haydon Shown on the June 23, 2023 Accounts Receivable Aging**

30.     According to the June 23, 2023 Accounts Receivable Aging which the Debtor submitted to Bank of America on June 28, 2023, as of June 23, 2023, Haydon owed a balance of $1,328,990.25 to the Debtor, as of June 23, 2023.  However, Haydon has indicated that its records show that the amount it owed to the Debtor as of June 23, 2023, was actually only $173,205.22 (or $173,282.11 taking into the fact that one invoice was paid short by $76.89) because the June 23, 2023 Accounts Receivable Aging included the following misstatements regarding invoices to Haydon:

(a)     $800,000 in overstatements because eight of the invoices listed on the June 23, 2023 Accounts Receivable Aging were listed on that aging as being $100,000 higher than the amount shown on each of those invoices;

(b)     $199,493.29 in overstatements because those same eight invoices were not even outstanding as of June 23, 2023, because they had all been paid on June 3, 2023; and

(c)     $156,214.85 in overstatements, consisting of two invoices of which Hascall had no record.

31.     On July 10, 2023, at 9:19 a.m., I sent an email to Linda Ardizzone, an accounting specialist with Haydon, with a copy to Tim Boates of RAS, stating:

I work with RAS Management Advisors, LLC. We have been engaged by Otterbourg P.C. as part of their work on behalf of Bank of America, N.A. in a matter concerning Rapid Metals.

We have been asked to verify the amounts that your company owes Rapid Metals LLC. Therefore, can you please provide us with a detailed listing of the invoices you owe? We will use that list to compare to our records and follow up with you regarding any differences.

Please let me know if you have any questions about our request.

Thank you.

A copy of that email, together with the attachment to it, is attached hereto as <u>Exhibit E</u>.

32.     On July 11, 2023, at 9:39 a.m., Ms. Ardizzone responded to my email by sending me an email, copied to Tim Boates of RAS, Butler and Peter Nagle of Rapid Metals, attaching an aging report entitled "Aging analysis Vendors," which showed a balance of $64,730.31 due from the Debtor to Haydon as of June 30, 2023, consisting of the following three invoices:

- the Debtor's invoice no. 7156390, dated May 31, 2023, with a due date of June 30, 2023, in the amount of $14,514.76;

- the Debtor's invoice no. 1756397, dated May 31, 2023, with a due date of June 30, 2023, in the amount of $31,134.80; and

- the Debtor's invoice no. 7156382, dated June 29, 2023, with a due date of June 30, 2023, in the amount of $19.080.75.

A copy of Ms. Ardizzone's email, together with the attached aging report, is attached hereto as <u>Exhibit F</u>.

33.     Because the balance of $64,730.31 shown on Haydon's aging report as owed to the Debtor as of June 30, 2023, was only a fraction of the $1,328,990.25 shown as owed on the June 23, 2023 Accounts Receivable Aging, I followed up with Ms. Ardizzone by sending her an email on July 11, 2023, at 9:49 a.m., stating follows:

Thank you for the information.

According to our records, Haydon Corporation owed Rapid Metals more than $1.3 million as of 6/23. However, you are only showing $65,000 as owed as of 6/30.

Did Haydon make a large payment to Rapid Metals between 6/23 and 6/30? If so, can you please provide us with proof of payment?

Thank you.

A copy of that email appears in the email chain attached hereto as <u>Exhibit G</u>.

34.     On July 11, 2023, at 9:53 a.m., Ms. Ardizzone responded to my email by sending

me an email, which she also copied to Tim Boates of RAS, stating:

Haydon processes ACH payments to Rapid Metals which you should be able to see on their bank statement.

June 2 payment of $222,989.53
June 16 payment of $166,203.77
June 30 payment of $108,474.91

If you require anything additional, please let me know.

A copy of that email appears at page 2 of the email chain attached hereto as <u>Exhibit G</u>.

35.     On July 11, 2023, at 10:15 a.m., I responded to Ms. Ardizzone's email by sending

her an email, with a copy to Tim Boates, stating:

Thank you for this additional information.

Attached and pasted below is a listing invoices that Rapid reported on their AR aging for Haydon (as of 6/23) compared to Haydon's AP listing for Rapid (as of 6/30). Rapid reported at least $1.155 million more than you are reporting. Can you please review the invoice listing and let me know (1) if the other invoices were valid at one point and/or (2) when the other invoices were paid?

We appreciate your cooperation. Please let me know if you have any questions. Thank you.

Rapid Metals, LLC
Accounts Receivable, as of 6/23/23
Customer: Haydon Corporation

| Customer | Inv | Date | Customer No | Customer Name | 1-30 | 31 - 60 | 61 - 90 | > 91 | Total | Per Cust |
|---|---|---|---|---|---|---|---|---|---|---|
| INVOICE | 7155807 | 4/19/2023 | HAYDON | HAYDON CORPOATION | - | 127,724.19 | - | - | 127,724.19 | |
| INVOICE | 7155944 | 4/27/2023 | HAYDON | HAYDON CORPOATION | - | 124,984.17 | - | - | 124,984.17 | |
| INVOICE | 7155942 | 4/27/2023 | HAYDON | HAYDON CORPOATION | - | 125,880.42 | - | - | 125,880.42 | |
| INVOICE | 7155939 | 4/27/2023 | HAYDON | HAYDON CORPOATION | - | 124,357.70 | - | - | 124,357.70 | |
| INVOICE | 7155938 | 4/27/2023 | HAYDON | HAYDON CORPOATION | - | 122,724.06 | - | - | 122,724.06 | |
| INVOICE | 7155936 | 4/27/2023 | HAYDON | HAYDON CORPOATION | - | 124,819.32 | - | - | 124,819.32 | |
| INVOICE | 7155926 | 4/27/2023 | HAYDON | HAYDON CORPOATION | - | 123,485.70 | - | - | 123,485.70 | |
| INVOICE | 7155963 | 4/28/2023 | HAYDON | HAYDON CORPOATION | - | 124,648.44 | - | - | 124,648.44 | |
| INVOICE | 7155957 | 4/28/2023 | HAYDON | HAYDON CORPOATION | - | 125,517.73 | - | - | 125,517.73 | |
| INVOICE | 7156259 | 5/22/2023 | HAYDON | HAYDON CORPOATION | - | 25,894.05 | - | - | 25,894.05 | |
| INVOICE | 7156316 | 5/25/2023 | HAYDON | HAYDON CORPOATION | 30,002.97 | - | - | - | 30,002.97 | |
| INVOICE | 7156309 | 5/25/2023 | HAYDON | HAYDON CORPOATION | 25,419.03 | - | - | - | 25,419.03 | |
| INVOICE | 7156307 | 5/25/2023 | HAYDON | HAYDON CORPOATION | 27,235.75 | - | - | - | 27,235.75 | |
| INVOICE | 7156397 | 5/31/2023 | HAYDON | HAYDON CORPOATION | 31,134.80 | - | - | - | 31,134.80 | x |
| INVOICE | 7156390 | 5/31/2023 | HAYDON | HAYDON CORPOATION | 14,514.76 | - | - | - | 14,514.76 | x |
| INVOICE | 7156382 | 5/31/2023 | HAYDON | HAYDON CORPOATION | 19,080.75 | - | - | - | 19,080.75 | x |
| INVOICE | 7156426 | 6/5/2023 | HAYDON | HAYDON CORPOATION | 31,566.41 | - | - | - | 31,566.41 | |
| | | | | | 178,954.47 | 1,150,035.78 | | | 1,328,990.25 | |

| | |
|---|---|
| Customer Payment - 6/30 | (108,474.91) |
| 6/23 balance less payment | 1,220,515.34 |
| Balance, per Customer | 64,730.31 x |
| Difference | (1,155,785.03) |

A copy of that email appears at the top of the email chain attached hereto as Exhibit G.

36.     On July 11, 2023, at 11:19 a.m., Ms. Ardizzone sent me an email, with copies to Tim Boates of RAS and Ian Fishman of Haydon, stating as follows:

Please be advised that the following invoices 7155807, 7155944, 7155942, 7155939, 7155938, 7155936, 7155926, 7155957 (see attached) are overstated by $100,000.00 on each invoice.

ACH payment of $222,989.53 was processed against the above invoices.

Invoice 7156259 was paid short at $25,817.16 instead of $25,894.05 as billed. Invoice should have been billed at .5895 for material instead of .5995 lb.

Invoice 7156259 was paid on ACH of 6/30/2023 for $108,474.91.

Invoice 7156316, 7156309, 7156307 were paid on ACH on 6/30/2023 for $108,474.91.

When time permits, I am missing copies of invoice 7155963 and 7156426.

If you require anything additional, please let me know.

37.     Ms. Ardizzone attached the following invoices to the email:  7156259, 7155807, 7155944, 7155942, 7155939, 7155938, 7155936, 7155926 and 7155957.   A copy of Ms.

Ardizzone's email, together with the nine invoices that were attached to it, is attached hereto as Exhibit H.

38.     A review of the invoices in the attachment to that email against the amounts shown on the June 23, 2023 Accounts Receivable Aging shows that the amount of each of the eight invoices referred to in the first paragraph quoted above (each of which was attached to the email, *see* Exhibit H hereto) was overstated by exactly $100,000 on the June 23, 2023 Accounts Receivable Aging.  In my professional experience, there is no way that this could have occurred in the absence of what appears to be fraud by Butler and the Debtor.

39.     In addition, as Ms. Ardizzone noted in her email, "ACH payment of $222,989.53 was processed against the above invoices," and her prior email indicated a payment date of June 2, 2023 (Exhibit H at 1, 3), so those invoices were not even outstanding on June 23, 2023.

40.     On July 11, 2023, at 5:57 p.m., I sent an email to Ms. Ardizzone, with copies to Tim Boates and Ian Fischman, stating:

Linda-

Thank you for this information. I have a few follow-up questions:

•     Regarding the ACH payment of $222,989.53 that "was processed against the above invoices."
o     What is the date of that payment?
o     The sum of the invoices you listed equals $199,493.29 (difference of $23,496.24).  Can you tell me what other invoices were paid with that payment?
•     Regarding "Invoice 7156259 was paid short at $25,817.16 instead of $25,894.05 as billed.  Invoice should have been billed at .5895 for material instead of .5995 lb."
o     What is the date of that payment?

A copy of my email to Ms. Ardizzone is attached hereto as Exhibit I.

41.     On July 12, 2023, at 9:04 a.m., Ms. Ardizzone responded to my email as follows:

Good morning, Mike.

Haydon ACH payment of $222,989.53 was processed on June 3rd.

This ACH covered the following Rapid invoices, 7155807, 7155926, 7155944, 7155942, 7155939, 7155938, 7155936, 7155957, 7156005.

Invoice 7156259 was paid short due to pricing and payment was process on ACH dated June 30th in the amount of $108,474.91.

ACH covered the following Rapid invoices 7156259, 7156309, 7156307 and 7156316.

If you require anything additional, please let me know.

A copy of Ms. Ardizzone's email is attached hereto as <u>Exhibit J</u>.

42.     In all, according to Haydon's records, $1,155,785.03 (or $1,155,708.14, taking into the fact that one invoice was paid short by $76.89) of the $1,328,990.25 shown on the June 23, 2023 Accounts Receivable Aging as being owed to the Debtor by Haydon was not owed as of that date.  This occurred because:

- eight of the invoices listed in the June 23, 2023 Accounts Receivable Aging provided by the Debtor to Bank of America were overstated by $100,000 each – a total overstatement of $800,000;

- the same eight invoices – which totaled approximately $200,000 – were all paid on June 3, 2023, and therefore should not have been listed at all;

- Invoice No. 7156426, for $31,566.41, and Invoice No. 7155963, for $124,648.44, did not exist; and

- four invoices – which totaled $108,474.91 – were paid on June 30, 2023, and were properly listed on the June 23, 2023 Accounts Receivable Aging.

43.     Thus, there is every reason to believe Haydon's aging, which reflected an outstanding balance of $64,730.31 as of June 30, 2023, and Haydon's statement that $108,474.91 was paid on June 30, 2023, are correct, and that the amount shown as owed by Haydon to the Debtor on the June 23, 2023 Accounts Receivable Aging was fraudulently overstated by Mr. Butler by $1,155,785.03.

**C.** **The Nonexistent $638,890.96 of Invoices Shown as Owed by Center Steel on the June 23, 2023 Accounts Receivable Aging**

44.     According to the June 23, 2023 Accounts Receivable Aging, which the Debtor provided to Bank of America on June 28, 2023, Center Steel owed $638,890.96 to the Debtor. This was the seventh largest balance shown on the June 23, 2023 Accounts Receivable Aging.

45.     The items appearing on the June 23, 2023 Accounts Receivable Aging referred to the following invoices:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Rapid Metals, LLC** | | | | | | | | | |
| **Accounts Receivable, as of 6/23/23** | | | | | | | | | |
| **Customer: Center Steel** | | | | | | | | | |
| **Customer** | **Inv** | **Date** | **Customer No** | **Customer Name** | **1-30** | **31 - 60** | **61 - 90** | **> 91** | **Total** |
| INVOICE | 7161002 | 5/1/2023 | CENTE | CENTER STEEL | - | 64,782.80 | - | - | 64,782.80 |
| INVOICE | 7161002 | 5/1/2023 | CENTE | CENTER STEEL | - | 64,782.80 | - | - | 64,782.80 |
| INVOICE | 7161004 | 5/1/2023 | CENTE | CENTER STEEL | - | 61,861.25 | - | - | 61,861.25 |
| INVOICE | 7161004 | 5/1/2023 | CENTE | CENTER STEEL | - | 61,861.25 | - | - | 61,861.25 |
| INVOICE | 7161005 | 5/1/2023 | CENTE | CENTER STEEL | - | 61,951.19 | - | - | 61,951.19 |
| INVOICE | 7161005 | 5/1/2023 | CENTE | CENTER STEEL | - | 61,951.19 | - | - | 61,951.19 |
| INVOICE | 7161006 | 5/1/2023 | CENTE | CENTER STEEL | - | 65,451.35 | - | - | 65,451.35 |
| INVOICE | 7161006 | 5/1/2023 | CENTE | CENTER STEEL | - | 65,451.35 | - | - | 65,451.35 |
| INVOICE | 7161009 | 5/1/2023 | CENTE | CENTER STEEL | - | 65,398.89 | - | - | 65,398.89 |
| INVOICE | 7161009 | 5/1/2023 | CENTE | CENTER STEEL | - | 65,398.89 | - | - | 65,398.89 |
| | | | | | - | 638,890.96 | - | - | 638,890.96 |

46.     Attached hereto as <u>Exhibit K</u> is an email chain between Center Steel's controller, Alison Hammond, and me. In an email sent on July 11, 2023, at 6:00 p.m., I stated:

> I work with RAS Management Advisors, LLC. We have been engaged by Otterbourg P.C. as part of their work on behalf of Bank of America, N.A. in a matter concerning Rapid Metals.

> We have been asked to verify the amounts that your company owes Rapid Metals LLC. Therefore, can you please provide us with a detailed listing of the invoices you owe? We will use that list to compare to our records and follow up with you regarding any differences.

> Please note that our records are as of 6/23. Therefore, can you also let me know if your company has made any payments since 6/23?

> Please let me know if you have any questions about our request.

> Thank you.

47. In an email sent on July 12, 2023, at 10:17 a.m., Ms. Hammond responded: "We do not owe Rapid Metals any funds at this time, nor do we have any open orders with them." That email is also part of the email chain attached hereto as <u>Exhibit K</u>.

48. In an email sent on July 12, 2023, at 10:21 a.m., I replied to Ms. Hammond as follows: "Thank you, Alison. Can you tell me when you last paid Rapid Metals? And How much that payment was for?" A copy of that email is attached hereto as <u>Exhibit K</u>.

49. In an email sent on July 12, 2023, at 10:34 a.m., Ms. Hammond wrote as follows: "The last payment was over a year ago in June 2022." A copy of that email is also included in the email chain attached hereto as <u>Exhibit K</u>.

### <u>My Attempts to Obtain Information from Other Customers<br>Regarding Accounts Receivable</u>

50. I attempted unsuccessfully to obtain information from several other large customers of Rapid Metals.

51. The second largest receivable listed on the June 23, 2023 Accounts Receivable Aging was a balance of $2,008,354.16 was shown as due form MAC Corporation. On July 11, 2023, at 2:32 p.m., I attempted to confirm that receivable by sending an email to Ruby Tejeda of MAC Corporation stating:

> Thank you taking the time to talk to me. As discussed,
>
> I work with RAS Management Advisors, LLC. We have been engaged by Otterbourg P.C. as part of their work on behalf of Bank of America, N.A. in a matter concerning Rapid Metals.
>
> We have been asked to verify the amounts that your company owes Rapid Metals LLC. Therefore, can you please provide us with a detailed listing of the invoices you owe? We will use that list to compare to our records and follow up with you regarding any differences.
>
> Our records are as of 6/23. Therefore, can you also let me know if your company has made any payments since 6/23?

Please let me know if you have any questions about our request. Thank you for
your cooperation.

A copy of that email appears in the email chain attached hereto as <u>Exhibit L</u>.

52.     On July 11, 2023, Ms. Tejeda sent me an email attaching a document showing an

outstanding balance of only $1,653,999.94.  A copy of Ms. Tejeda's email to me (without the

attachment) appears in the email chain attached hereto as <u>Exhibit L</u>.

53.     On July 11, 2023, at 3:53 p.m., I sent Ms. Tejeda an email seeking to reconcile the

discrepancies between the June 23, 2023 Accounts Receivable Aging and MAC Corporation's

records.  In that email, I stated:

> Ruby-
>
> Thank you for the information.
>
> Attached is a file with the invoices totaling $1.654 million that you show as owed
> to Rapid Metals compared to the invoices totaling $2.008 million that Rapid Metals
> shows as owed to them (as of 6/23). There is a $354,000 difference.
> •      There are 8 invoices that you show as owed but Rapid Metals does not. I
> have highlighted those invoices in green.
> o      5 of those invoices are dated after 6/23. Therefore, I can understand why
> they are not listed on Rapid Metals AR.
> o      Do you know why the other 3 invoices might not be listed?
> •      There are 39 invoices that Rapid Metals shows are being owed. I have
> highlighted those in yellow. Can you please review the invoice listing and let me
> know (1) if the other invoices were valid at one point and/or (2) when the other
> invoices were paid?
>
> Thank you.

54.     Attached to my email was a spreadsheet showing the discrepancies between the

June 23, 2023 Accounts Receivable Aging and the document she had sent me.  My email and the

attached spreadsheet are also part of <u>Exhibit L</u>.

55.     Ms. Tejeda did not respond to my email seeking to reconcile the $354,354.22

difference.

56.    The June 23, 2023 Accounts Receivable Aging, which the Debtor submitted to Bank of America on June 28, 2023, lists a total of approximately $1.928 million due to the Debtor from MBA Building Supplies – a supplier of light gauge steel framing company based in Libertyville, Illinois, which is a customer of the Debtor – which was the third largest receivable balance shown on the June 23, 2023 Accounts Receivable Aging.  I attempted unsuccessfully to confirm those amounts with MBA Building Supplies

57.    On July 11, 2023, I spoke with Anna Kulapina, an accounts payable specialist with MBA Building Supplies and then sent her an email at 11:15 a.m. on that date.  In my email to Ms. Kulapina, I stated:

> Anna-
>
> Thank you taking the time to talk to me.  As discussed,
>
> I work with RAS Management Advisors, LLC. We have been engaged by Otterbourg P.C. as part of their work on behalf of Bank of America, N.A. in a matter concerning Rapid Metals.
>
> We have been asked to verify the amounts that your company owes Rapid Metals LLC. Therefore, can you please provide us with a detailed listing of the invoices you owe? We will use that list to compare to our records and follow up with you regarding any differences.
>
> Our records are as of 6/23. Therefore, can you also let me know if your company has made any payments since 6/23?
>
> You mentioned that you sent an email yesterday to somebody identifying differences. Can you please send me that email as well?
>
> Please let me know if you have any questions about our request. Thank you for your cooperation.

A copy of that email, together with the attachment to that email, is attached hereto as <u>Exhibit M</u>.

As of today, Ms. Kulapina has not responded to my email.

58.     Davis Gate & Wire Manufacturing, Inc. ("Davis Gates") is shown as the fifth largest receivable listed on the June 23, 2023 Accounts Receivable Aging, with a balance of approximately $755,000.  On July 11, 2023, at 12:53 p.m., I sent an email to Pam of Davis Gates (at PAMP@DAVISGATES.COM), with copies to Tim Boates of RAS and Mark Levine of Otterbourg P.C., requesting information which I needed in order to verify that balance.  A copy of that email is attached hereto as Exhibit N.  Pam did not respond to that email.

59.     I was able to confirm the $686,000 balance listed on the June 23, 2023 Accounts Receivable Aging for Valiant Steel & Equipment, Inc. ("Valiant") – the sixth largest receivable listed on the June 23, 2023 Accounts Receivable Aging.  This was the only balance shown on the June 23, 2023 Accounts Receivable Aging that I was able to confirm.

60.     On July 10, 2023, at 4:11 p.m., I sent an email to Zdravko Mlinaric (at zmlinaric@shurlok.ca), the General Manager of Shur Lok Products – the eighth largest receivable listed on the June 23, 2023 Accounts Receivable Aging, which was shown as having a balance of approximately $568,000  – with a copy to Tim Boates of RAS, requesting information needed to verify that balance.  A copy of that email is attached hereto as Exhibit O.  Mr. Mlinaric did not respond to that email.

61.     On July 10, 2023, at 5:40 p.m., I sent an email to John Scott, the president and owner of Scott Steel LLC (at john.scott@scottsteelllc.com) – the ninth largest receivable listed on the June 23, 2023 Accounts Receivable Aging, which was shown as having a balance of approximately $477,000 – with a copy to Tim Boates of RAS, requesting information needed to verify that balance.  A copy of that email is attached hereto as Exhibit P.  Mr. Scott did not respond to that email.

62.     Stern Steel LLC is a customer of the Debtor that was shown on the June 23, 2023 Accounts Receivable Aging as having an outstanding balance of $66,000.  On July 8, 2023, at 2:47 p.m., I sent an email to Scott Sternheimer, the CEO of Stern Steel LLC with copies to Joshua Stein of Stern Steel and Tim Boates of RAS, requesting "a detailed listing" of the amount owed by Stern Steel LLC.

63.     On July 12, 2023, at 6:51 p.m., Mr. Stein sent me an email stating:  "We will review the item quickly with counsel as well as gather details in order to provide a response."  A copy of an email chain that includes both emails is attached hereto as Exhibit Q.  On July 18, 2023, Joshua Stein sent an email with a listing of outstanding invoices totaling $83,715.64.  However, as a result of the Debtor's bankruptcy filing, I was not able to respond to him with a reconciliation and a request that he explain the differences between Rapid Metals' records as of June 23, 2023, and Stern Steel LLC's records as of July 18, 2023.

64.     St. Mama Holding Company ("St. Mama") is listed on the June 23, 2023 Accounts Receivable Aging as owing approximately $17,000 to the Debtor.  On July 7, 2023, at 5:32 p.m., I sent an email to Matthew Keller, the head of sales for St. Mama (at matthew@flatcarbonsteel.com), with copies to Tim Boates of RAS and Michael Regina of Otterbourg P.C., requesting "a detailed listing in Excel of the invoices that you owe Rapid Metals so that we can compare to our records."  A copy of that email is attached hereto as Exhibit R.  Neither Mr. Keller nor anyone else affiliated with St. Mama responded to my email.

65.     Windy City Metals is listed on the June 23, 2023 Accounts Receivable Aging as owing a balance of approximately $13,000 to the Debtor.  On July 7, 2023, at 6:39 p.m., I sent an email to Theresa of Windy City Metals (at tjust@windycitymetals.com), with a copy to Tim Boates of RAS, requesting a "detailed list of invoices that Windy City owed to Rapid Metals so we can

compare to our records." A copy of that email is attached hereto as <u>Exhibit S</u>. Neither Theresa

nor anyone else affiliated with Windy City Metals responded to that email.

<b><u>Why the Marcero Decl. Overstates the Value</u><br><u>of the Debtor's Accounts Receivable and Inventory</u></b>

66.     In the Marcero Decl., Marcero makes the following statement, without any further

explanation, backup or calculation:

> 13.     The Debtor's material assets include inventory and collectible receivables.   Based upon the best information available to me, without admission, it appears that the cash collateral, as defined in 11 U.S.C. § 363 (the "Cash Collateral") consists of the following:
>
>> a.     Accounts receivable valued at approximately $10,578,385, which was confirmed on a sample test basis.
>
>> b.     Available Funds valued at approximately $2,693,364.
>
> 14.    It also appears that the Debtor's inventory is valued at approximately, $14,679,360.00, which was confirmed on a sample test basis.

(Marcero Decl. ¶¶ 13, 14.)

67.     Because it is undeniable that Butler (acting on behalf of the Debtor) committed

what appears to be a massive fraud with respect to the Debtor's assets and accounts receivable,

extrapolating from a sample to the overall population of invoices or accounts receivable is

inherently unreliable.  Consequently, there is no reason to believe that Marcero's testing of samples

of the Debtor's accounts receivable and inventory accurately reflects the actual amount of the

Debtor's accounts receivable and inventory.  That is especially so given the results of my attempts

(described above) to confirm the amounts of the Debtor's nine largest accounts receivable as of

shortly before the bankruptcy filing.

68.     In addition, Marcero's assertion that the Debtor has "[a]ccounts receivable valued

at approximately $10,578,385, which was confirmed on a sample test basis" is also unsupported

because she does not indicate that she has analyzed the collectability of the Debtor's current accounts receivable. In my experience, entities (like the Debtor) that are in bankruptcy and are being wound down collect far below 100% of their accounts receivable. The reasons for this include that customers are much more likely to pay balances owed to an entity with which they expect to have a continuing business relationship than they are to pay balances owed to an entity that is in bankruptcy or with which they do not expect to have a continuing business relationship.

69. Here, the Debtor has been in bankruptcy since July 12, 2023, nearly three weeks ago, and has not been operating during that time. In addition, I understand that, during that period, collections of the Debtor's accounts receivable have been only minimal. Consequently, based upon my experience, even if the Debtor had $10,578,385 of accounts receivable – which is highly unlikely – a large percentage of those accounts receivable will be uncollectible. Yet, Marcero fails to indicate that she has even considered collectability. In addition, while Marcero claims that "[i]t also appears that the Debtor's inventory is valued at approximately $14,679,360.00" (Marcero Decl. ¶ 14), in my experience, where an entity is in bankruptcy and is winding down its business, it becomes difficult to monetize its inventory, as current customers look to other sources to fill orders, and because parties are unwilling to do business with an entity that is in bankruptcy and/or will not exist in the future. As a result, even if the Debtor has inventory that with a market value of $14,679,350.00 – which the Marcero Decl. does not establish and which appears unlikely – the amount which the Debtor can expect to realize from that inventory in a liquidation would be far less than $14,679,350.00. Yet, there is no indication in the Marcero Decl. that Marcero even considered the liquidation value of the Debtor's inventory.

70. Monetizing the Debtor's inventory and accounts receivable will be even more difficult here because the Debtor's business resembles that of a broker in that the Debtor purchases

metals from suppliers, which ships those metals to a third-party processor that processes them to a customer's specifications and stores them, and ultimately ships them to and bills the Debtor's customer. The pending bankruptcy proceeding with respect to the Debtor may also cause the processing companies that it uses to be hesitant to process, store and ship metals for the Debtor, further impairing the Debtor's efforts to collect on any existing receivables or liquidate any existing inventory.

71.     Because Marcero's descriptions of the Debtor's inventory and accounts receivable do not indicate that they take any of these factors into account, based upon my experience, even to the extent they exist, the Debtor's accounts receivable and inventory will yield substantially less than the dollar amounts Marcero claims they are "valued at."

72.     Finally, I note that Huron sent certain limited materials to me. However, because those materials expressly indicated that they were sent for settlement purposes only pursuant to Fed. R. Evid. 408, I have not referred to them in this Declaration. If authorized by the Debtor and/or Huron to do so, I will be happy to explain my views regarding those materials to the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 1, 2023

_____/s/ Michael Rizzo_____
Michael Rizzo